UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH JAMES BURKE,<br><br>                    Plaintiff,<br>v.<br><br>SCOTT STEADMAN, *et al*.,<br><br>                    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 13-CV-0582-DMS (WVG)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND**<br><br>[DOC. NO. 18] |

## I. INTRODUCTION

On February 20, 2013, Plaintiff Kenneth James Burke (hereinafter "Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Civil Rights Complaint (hereinafter "Complaint") under 42 U.S.C. § 1983 in the Central District of California.  (Doc. Nos. 1, 2, 9.)  On March 1, 2013, the Complaint was transferred to this judicial district.  (Doc. No. 2.)  On November 5, 2013, Defendants Scott Steadman, David Cavender, Homer, M. Ridge, and Dr. I. Choo (hereinafter "Defendants") filed a Motion to Dismiss (hereinafter "Motion to Dismiss") and a Wyatt Notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). (Doc. No. 18.)  On November 6, 2013, the Court also provided Plaintiff with a Notice pursuant to Wyatt.  (Doc. No. 19.)

On November 26, 2013, Plaintiff filed an Opposition to Defendants' Motion to Dismiss.  (Doc. No. 22.)  On December 2, 2013, Defendants filed a Reply in Support of their

13CV0582

1  Motion to Dismiss.  (Doc. No. 23.)  On December 19, 2013, Plaintiff filed a Sur-Reply to
2  Defendants' Reply.  (Doc. No. 26.)

3      The Court, having reviewed Plaintiff's Complaint, Defendants' Motion to Dismiss,
4  Plaintiff's Opposition, Defendants' Reply, and Plaintiff's Sur-Reply, hereby finds that
5  Plaintiff is not entitled to the relief requested and therefore RECOMMENDS that
6  Defendants' Motion to Dismiss be GRANTED, and that Plaintiff's Complaint be
7  DISMISSED with leave to amend.

8  **II. <u>FACTUAL ALLEGATIONS</u>**

9      This statement of facts is based, in large part, upon the allegations in Plaintiff's
10 Complaint and upon the facts described in the administrative appeals that were attached to
11 the Complaint as exhibits.  Plaintiff was a state prisoner at Richard J. Donovan Correctional
12 Facility (hereinafter "Donovan") at the time of the events herein, and was transferred to the
13 California Institute for Men (hereinafter "CIM") on November 10, 2011.  (Doc. Nos. 9 at 2,
14 5; 18-1 at 16.)

15     Plaintiff is sixty years old and has had four strokes within the last ten years.  (Doc. No.
16 9 at 5.)  He is confined to a wheelchair due to a stroke that left him without the use of his left
17 arm or left leg.  <u>Id.</u>  Plaintiff has not been able to walk or stand in four years, and suffers
18 from a defective heart disorder which causes blood clots.  <u>Id.</u>  Plaintiff's physical imbalance
19 from stroke damage and his blood thinner medication make him a high risk for falls, internal
20 bleeding, and bruising.  <u>Id.</u>

21     Plaintiff was transferred to Donovan on May 17, 2011.  (Doc. No. 9 at 18, 62.)  In
22 June of 2011, a crack in the track on Donovan's A Yard caused Plaintiff to fall from his
23 wheelchair.  <u>Id.</u> at 6-7.  Plaintiff injured his right ankle, shoulder, and neck.  <u>Id.</u>  He was seen
24 by a nurse, who told Plaintiff that he would be okay.  <u>Id.</u> at 7.  He was not given a physical
25 exam, X-rays, tests, or a referral to see a doctor.  (Doc. No. 9 at 7.)  On June 12, 2011,
26 Plaintiff filed an American with Disabilities Act ("ADA") appeal, referred to as a Reasonable
27 Modification or Accommodation Request, in which Plaintiff requested that the A Yard track
28 be resurfaced, or at the least to have a wheelchair lane on the track.  <u>Id.</u> at 7, 51.  Plaintiff

also requested a transfer to an Outpatient Housing Unit (hereinafter "OHU") hospital prison.[1] Id.  On June 2, 2011, Plaintiff's doctor, Defendant Ridge, ordered that Plaintiff be transferred to an OHU.  Id.

After his fall in June of 2011, Plaintiff was interviewed by Defendant Steadman, Donovan's Plant Operations Supervisor, and Defendant Cavender, Associate Warden, Business Services, concerning the A Yard track's hazardous condition. (Doc. No. 9 at 7, 13.) Defendants partially granted Plaintiff's Reasonable Modification or Accommodation Request and, on July 15, 2011, issued a decision that "Plant Operations will restripe the path of travel on Yard 1 and make repairs as needed in the path of travel."[2] Id. at 7, 50.

Plaintiff was also interviewed by Defendant Homer, Correctional Counselor and ADA Liaison, during her monthly review of ADA prisoners. (Doc. No. 9 at 8.)  During numerous interview sessions with Defendant Homer, Plaintiff brought up the hazardous conditions on the A Yard's track.[3] Id.  Plaintiff pointed out that the most dangerous areas with the deepest cracks and gaps were located in high traffic areas on the path to the only handicapped accessible toilet. Id. 8-9.  He also noted that there were three to four inch uneven cracks and gaps in front of the medication dispensing window, the medical clinic, church, mental health building, and the custody program office.  Id.  Plaintiff told Defendant Homer about the damage to his wheelchair caused by the hazardous track conditions.  Id. at 9.  Defendant

---

[1] CDCR has adopted the California Code of Regulations, Title 22, Section 79555 definition of an OHU: An outpatient housing unit means a housing unit of a city, county or city and county law enforcement facility established to retain inmates who require special housing for security or protection.  Typically, these are inmates whose health condition would not normally warrant admission to a licensed heath care facility and for whom housing in the general population may place them at personal or security risk.  Outpatient housing unit residents may receive outpatient health services and assistance with the activities of daily living.  Outpatient housing unit beds are not licensed correctional treatment center [CTC] beds.  California Correctional Health Case Services: http://www.cphcs.ca.gov/docs/imspp/IMSPP-v04-ch14.pdf

[2] Yard A was previously known as Yard 1.  (Doc. No. 9 at 7.)

[3] Plaintiff claims that he presented these concerns to Defendant Homer every month during their interviews between May of 2011 and November of 2011.  (Doc. No. 9 at 9.) However, Plaintiff also claims that his first fall from his wheelchair due to the track conditions on Donovan's A Yard did not occur until June of 2011.

Homer told Plaintiff that she would notify Plant Operations to inquire about getting the repairs made.  Id.

On November 4, 2011, Plaintiff was wheeling himself to the only handicapped accessible toilet on Donovan's A Yard, when the front wheel of his wheelchair got stuck in a crack or gap that was three to four inches wide and deep in the track surface.  (Doc. No. 9 at 6.)  The gap was located where the asphalt meets the cement ramp that provides access to the handicapped toilet.  Id.  Plaintiff was pitched forward and dumped out of his wheelchair onto the asphalt track, causing injuries to his head, neck, shoulders, and back. Id. at 5, 6.  He was transported via ambulance to Sharp Hospital in Chula Vista, California. (Doc. Nos. 9 at 6; 18-1 at 16.)

Plaintiff stayed at the hospital overnight on November 4, 2011, and then returned to Donovan where he was re-housed in his wheelchair accommodating cell from November 5, 2011, until November 10, 2011.  (Doc. No. 18-1 at 16.)  On November 10, 2011, Plaintiff was transferred to CIM.  (Doc. Nos. 9 at 8; 18-1 at 16.)

On December 1, 2011, Plaintiff submitted an administrative appeal concerning the November 4, 2011, incident to the appeals coordinator at CIM.  (Doc. No. 18-1 at 15.)  The CIM appeal's coordinator cancelled Plaintiff's appeal that same day, and in a December 1, 2011, screen-out letter, Plaintiff was advised that the appeal should have been submitted to Donovan, the facility where the incident occurred.  Id; Exh A to Defendants' Motion to Dismiss, screen-out letter.  The screen-out letter from CIM directed Plaintiff to send his appeal directly to Donovan for further processing.  Id; Exh A to Defendants' Motion to Dismiss, screen-out letter.

On January 10, 2012, Plaintiff's appeal was received at Donovan.[4/]  (Doc. No. 18-5 at 14.)  On January 25, 2012, the Donovan appeals office cancelled Plaintiff's appeal as

_____

[4/] As noted in Defendants' Declaration of R. Olson, Appeals Coordinator at Donovan, Plaintiff's initial appeal was date stamped as having been received at Donovan on January 10, 2011.  (Doc. No. 18-5 at 5-6.)  However, Mr. Olson states in his Declaration that it is evident that the year on Donovan's date stamp was in error, and that Plaintiff's appeal was actually received at Donovan on January 10, 2012, because Plaintiff alleges that the incident of which he was appealing did not occur until November 4, 2011.  Id. at 6.

13CV0582

untimely and not properly submitted because he did not submit the appeal within thirty calendar days of the event, as required by the California Code of Regulations.  Cal. Code Regs. tit. 15, § § 3084.2, 3084.2(a)(1) (2011).

Plaintiff appealed the cancellation of his appeal.  (Doc. No. 18-1 at 17.)  On February 14, 2012, the appeals office at Donovan received Plaintiff's appeal of the denial of his first appeal.  Id.  This appeal was timely submitted and accepted for review at Donovan.  Id.  The first level review of this appeal was bypassed, and it was reviewed at the second level by Chief Deputy Warden W. Suglich.  Id; citing Decl. R. Olson, see Exh. E.  The reviewer determined that Plaintiff originally submitted the appeal about the November 4, 2011, incident to the wrong institution, and that after CIM notified Plaintiff of the error on December 1, 2011, Plaintiff failed to submit his appeal to the Donovan appeals office until January 10, 2012.  Id.  The reviewer concluded that Plaintiff's appeal of the incident was received at the proper institution for review "67 days after the date of discovery and well past any established cutoff date to timely submit an appeal."  Id; citing Exh. E, page 2.  The reviewer found no evidence to support Plaintiff's contention that he mailed the appeal to Donovan's appeals office within days of receiving the screen-out letter from CIM.  Id.  Thus, the reviewer determined the Plaintiff's original administrative appeal was properly cancelled.  Id.

Plaintiff appealed that decision at the third level of review to the Office of Appeals in Sacramento, California. (Doc. No. 18-1 at 18.)  The third level reviewer reached the same conclusion that Plaintiff's original administrative appeal of the November 4, 2011, incident was properly cancelled as untimely.  Id; citing Decl. R. Olson ¶ 18, see also Decl. J.D. Lozano, ¶ ¶ 8-10 & Exh. A.

### III. **PLAINTIFF'S CLAIMS**

It appears that Plaintiff asserts both Eighth Amendment claims and ADA claims again Defendants Steadman, Cavender, and Homer, but asserts only Eighth Amendment claims again Defendants Ridge and Choo.  All five Defendants are named in their official capacities only.  Plaintiff seeks declaratory relief, injunctive relief ordering Defendants to repair the

13CV0582

track surface on Donovan's A Yard, punitive damages, compensatory and nominal damages, and costs and expenses.  (Doc. No. 9 at 24.)

### A. CLAIMS AGAINST DEFENDANTS STEADMAN, CAVENDER, AND HOMER

Plaintiff alleges that Defendants Steadman, Cavender, and Homer did not provide a safe environment for him because they allowed hazardous, potentially life threatening track surface conditions that Plaintiff was forced to navigate several times each day.  (Doc. No. 9 at 10.)  Because the hazardous track conditions were not repaired after his fall in June of 2011, Plaintiff claims that he was deprived of safe access to the handicapped toilet, medication pick-up window, medical clinic, church, and mental health offices.  Id. at 10-11.

Plaintiff claims that Defendant Steadman, as Donovan's Plant Operations Supervisor, was responsible to ensure there was a safe, level, barrier-free path of travel for Plaintiff, an ADA disabled prisoner within Donovan.  (Doc. No. 9 at 10.)  Plaintiff also alleges that Defendant Cavender, as Associate Warden, Business Services, had the administrative authority and responsibility to make sure that the repairs on Donovan's A Yard track were completed in July of 2011, after he assured Plaintiff verbally and in a written statement that the repairs would be made.  Id. at 16.  Plaintiff alleges that Defendant Homer, a correctional counselor at Donovan, was assigned as an ADA liaison responsible for ensuring that disabled prisoners were not discriminated against and were provided with a safe and handicap accessible environment.  Id. at 15.

Plaintiff claims that he brought the hazardous track conditions to the attention of Defendants Steadman and Cavender during an interview in response to a request that he filed on June 12, 2011, after the track conditions caused him to fall out of his wheelchair the first time.  (Doc. No. 9 at 12.)  In Plaintiff's Reasonable Modification or Accommodation Request, Plaintiff requested "to have (sic) track around yard resurfaced or at least have a wheelchair lane."  (Doc. No. 9 at 51.)  Plaintiff alleges that during their interview, Defendants Steadman and Cavender assured Plaintiff that the repairs would be made as soon as possible.  Id. at 13.  In Plaintiff's Complaint, he notes that Defendant Steadman stated,

"...all that was needed was to restrip (sic) the path of travel." (Doc. No. 9 at 13.) On July 15, 2011, Plaintiff's request was partially granted by Defendants Steadman and Cavender. Id. at 51. In a memorandum to Plaintiff, Defendants wrote, "Plant Operations will restripe the path of travel on Yard 1 and make repairs as needed in the path of travel." Id. at 50. However, Plaintiff asserts, the repairs had not been made five months later when he again fell out of his wheelchair due to a gap on the A Yard track. Id. He claims that during those five months, the only repairs made to the A Yard track were lines painted on the asphalt and a trench that was filled. Id. at 14.

Plaintiff claims that Defendants Steadman and Cavendar failed to have the repairs made, and Defendant Homer[5] "turn[ed] a blind eye" to the hazardous track conditions. (Doc. No. 9 at 14-15.) Thus, Plaintiff claims, these Defendants allowed the hazardous track conditions to endanger Plaintiff's life and well-being and violated his Eighth Amendment right to be free from cruel and unusual punishment, and his ADA right to safe, level, barrier-free access to facilities. (Doc. No. 9 at 14-15.)

## B. CLAIMS AGAINST DEFENDANTS RIDGE AND CHOO

On June 2, 2011, Defendant Ridge, Plaintiff's primary care doctor at Donovan, ordered Plaintiff to be transferred to an Outpatient Unit hospital prison. (Doc. No. 9 at 17-18.) During the visit, Ridge assessed Plaintiff as a high risk for falls, and high risk for health problems related to personal hygiene. Id. at 55. Defendant Ridge wrote, "I feel he needs

---

[5] On August 25, 2011, Plaintiff was interviewed by Michael Freedman, an attorney, during Mr. Freedman's tour of Donovan. (Doc. No. 9 at 9.) Plaintiff made Mr. Freedman aware of the hazardous track conditions. Id. In Plaintiff's Complaint, he claims that Mr. Freedman informed Plaintiff that he raised the issue with Donovan staff, including Defendant Homer. Id. However, Mr. Freedman's letter, attached to Plaintiff's Complaint, does not specify who he notified about the Yard A track conditions. Id. at 49. In a September 12, 2011, letter to Plaintiff, Mr. Freedman wrote, "I also raised the condition of the Facility 1 track with staff, and hopefully there will at least be some minor repairs made in the next few months." Id.

1    placement in an OHU type facility for daily assistance."[6] Id. Defendant Choo, Donovan's

2    Chief Physician and Surgeon, approved Plaintiff's transfer to an OHU.[7] Id. at 17, 19.

3          Plaintiff claims that, for unknown reasons, Defendants Ridge and Choo did not follow

4    through with his transfer to an OHU facility. (Doc. No. 9 at 19.) He asserts that, as head of

5    Donovan's medical department, it was Defendant Choo's responsibility to ensure that

6    Plaintiff was removed from the hazardous environment at Donovan and transferred to an

7    OHU facility as soon as possible after Defendant Ridge's assessment of his medical needs.

8    Id. Plaintiff claims that, had he been transferred to an OHU facility as ordered and approved

9    by Defendants Ridge and Choo, he would not have been on Donovan's A Yard on November

10   4, 2011, when he again fell out of his wheelchair due to a gap in the track's surface. Id. at

11   20. Plaintiff claims that Defendants Ridge and Choo violated his Eighth Amendment right

12   to be free from cruel and unusual punishment because they left him in an unsafe environ-

13   ment. Id. at 18, 21.

14   **IV. PROCEDURAL HISTORY**

15         On February 20, 2013, Plaintiff filed the instant lawsuit. (Doc. No. 2.) He claims to

16   have exhausted all available administrative remedies. (Doc. No. 9 at 2.) All of the named

17   Defendants have been served.

18   **V. STANDARD OF REVIEW**

19         A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

20   Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Fed.R.Civ.P.

21   12(b)(6).[8] Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

22   the pleader is entitled to relief" in order to "give the defendant fair notice of what the ...

---

23

24   [6] A July 28, 2011, note by Ronelle Campbell states that, Plaintiff requested to have
     shelves installed in his cell, or to be transferred to an OHU facility due to poor cell access

25   because of his cell mate's property. (Doc. No. 9 at 57.) Plaintiff claimed that he was unable
     to get from his chair to his bed. Id. The note does not mention Plaintiff's June 2011 fall
     from his wheelchair that was allegedly caused by the track conditions.

26

27   [7] It appears that Defendant Choo approved Plaintiff's request to transfer to an OHU
     facility on July 30, 2011. (Doc. No. 9 at 58.)

28   [8] Unless otherwise specified, all further references are to the Federal Rules of Civil
     Procedure.

13CV0582

claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Dismissal of a claim is appropriate only where the complaint lacks a cognizable theory. Bell Atlantic, 550 U.S. at 553-565. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. N.L. Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court does not consider whether the plaintiff will ultimately prevail. Scheuere v. Rhodes, 94 S.Ct. 1683, 1686 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).

"If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (1991) (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)). "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." Roth, 942 F.2d 625 n.1 (citing Ott v. Home Savings & Loan Ass'n, 265 F.2d 643, 646 n.1 (9th Cir. 1958)).

To state a claim under 42 U.S.C. Section 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003); Balistreri v. Pacific Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). Vicarious liability does not exist under Section 1983. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted). To hold a person "liable under [S]ection 1983 there must be a showing of personal participation in the alleged rights deprivation." Id. A supervising official may be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitu-

13CV0582

tional violation.  See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991), *abrogated on other grounds by* Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Causation may be established only by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury.  Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

Moreover, where a plaintiff appears *in propria persona* in a civil rights case, the Court must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988), *abrogated in part as stated in* Boarman v. County of Sacramento, 2013 WL 1326196, at 7 (E.D. Cal. Mar. 29, 2013); Bretz v. Kelman, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v.Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a *pro se* civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id; see also Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.").  Thus, at a minimum, even the *pro se* plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim."  Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

## VI. DISCUSSION

Defendants raise three grounds in support of their Motion to Dismiss.  First, they contend that they are immune to claims for money damages because they have been sued only in their official capacities.  (Doc. No. 18 at 2.)  Second, they argue that Plaintiff's claims for injunctive relief are moot because he is no longer housed at Donovan, the facility where the incident occurred.  Id.  Third, Defendants claim that Plaintiff has not exhausted his administrative remedies concerning his Eighth Amendment and ADA claims related to

the November 4, 2011, incident, as required by the Prison Litigation Reform Act (hereinafter "PLRA").  Id.

## A. DEFENDANTS, IN THEIR OFFICIAL CAPACITIES, ARE IMMUNE TO SUITS FOR DAMAGES

Under the Eleventh Amendment, states are immune from private damage actions brought in federal court.  Henry v. County of Shasta, 132 F. 3d 512, 517 (9th Cir. 1997).  Such immunity flows to state officials, barring suits for damages against them in their official capacities.  Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997).

In this case, Plaintiff seeks unspecified punitive, compensatory, and nominal damages from each Defendant, but sues them only in their official capacities.  (Doc. No. 9 at 24.)  Insofar as he seeks these monetary damages from Defendants in their official capacities, his suit is barred.  Even assuming all of Plaintiff's contentions to be true, and considering his arguments in the light most favorable to him, Plaintiff cannot overcome this Constitutionally-imposed limitation.

In Plaintiff's Opposition and Sur-Reply, he asks the Court to send him a blank amended complaint so that he can "check both boxes...to sue Defendants in individual and official capacities."  (Doc. No. 22 at 2; 26 at 3.)  However, "[t]he focus of any Rule 12(b)(6) dismissal...is the complaint."  Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside of the pleadings.  Id.  This precludes consideration of "new" allegations that may be raised in an opposition to a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 Moore's Federal Practice, § 12.34(2) (Matthew Bender 3d ed.)  ("The court may not...take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")).

Further, the Court did not send Plaintiff any form on which to file his original Complaint, and will not send him a blank amended complaint.  Consequently, this Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED, and Plaintiff's Complaint be DISMISSED with leave to amend as to the monetary damages sought by Plaintiff from Defendants.

## B. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT BECAUSE HE IS NO LONGER HOUSED AT DONOVAN

Plaintiff requests injunctive relief ordering Defendants to repair the track surface on Donovan's A Yard. (Doc. No. 9 at 24.)  At the time that Plaintiff filed his Complaint, he had already been transferred to the California Institute for Men, and therefore, his request for injunctive relief is moot.  (Doc. Nos. 1, 2, 23.)

A claim is rendered moot when it loses its character as a present, live controversy, and no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." Gray v. Tuso, 1996 WL 161718, at 1 (N.D. Cal. Mar. 28, 1996); citing Flast v. Cohen, 392 U.S. 83, 95 (1068).  An exception to the mootness doctrine exists when a claim is "capable of repetition yet evading review." Gray, 1996 WL 161718, at 1; citing Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1509 (9th Cir. 1994).  This exception is limited to extraordinary circumstances where two elements combine: (1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the complaining party will again be subjected to the same action.  Id.  Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances.  Gray, 1996 WL 161718, at 1; citing Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate is transferred to another prison and there is no reasonable expectation nor demonstrated probability that the inmate will again be subjected to the prison conditions from which the inmate seeks injunctive relief, the claim for injunctive relief will be dismissed as moot.  Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (holding that a

13CV0582

prisoner's Section 1983 civil rights action seeking injunctive relief was moot because, after having been transferred from state to federal custody, he was no longer subject to the regulations that he sought relief from); see also Gray, 1996 WL 161718, at 1; citing Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  In such circumstances, the inmate's claim is moot because he is no longer subjected to the allegedly unconstitutional policies or conditions.  Johnson, 948 F.2d at 519.  Further, a claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to prevent mootness. Gray, 1996 WL 161718, at 1; citing Dilley, 64 F.3d at 1369.

In Dilley v. Gunn, the Ninth Circuit held that the defendants' appeal was moot because the plaintiff had been transferred to another prison, and that remand was warranted for determination of whether the defendants' conduct had caused the mootness, such that the injunction should not be vacated.  Dilley, 64 F.3d at 1372.  The plaintiff was an inmate at Calipatria State Prison at the time he filed a Section 1983 action alleging violation of his right of access to the courts due to Calipatria's failure to provide reasonable access to the prison's law library.  Dilley, 64 F.3d at 1367, 369.  At the time of filing, the plaintiff was classified as a Class IV inmate, which represents the highest level of risk to prison security. Id. at 1369.

The District Court for the Southern District of California granted summary judgment in favor of the plaintiff, entered an injunction requiring improvements to the Calipatria prison library, and retained jurisdiction.  Dilley, 64 F.3d at 1367.  The defendants appealed the district court's order granting injunctive relief.  Id. at 1367-68.  The defendants argued, and the Ninth Circuit agreed, that the case was moot on appeal since the plaintiff had been transferred from Calipatria to another California state prison.  Id. at 1368.  The Court explained, "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."  Id.

After finding the appeal to be moot, the Ninth Circuit remanded the case to the district court to determine whether to vacate the injunction.  Dilley, 64 F.3d at 1369.  In discussing

13

vacatur, the Court stated that, "when an appellant renders his appeal moot by his own act, our established procedure is not to vacate the district court's decision automatically, but to remand so the district court can decide whether to vacate its judgment in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to re-litigation of unreviewed disputes.'"  Id. at 1370-71.  The Court noted that, if the plaintiff's transfer from Calipatria was due to happenstance, then the district court's order granting injunctive relief should be vacated on mootness grounds.  Id. at 1371.  It clarified, however, that if the defendants were responsible for the plaintiff's transfer, the district court should consider relevant factors under Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720 (9th Cir. 1982),[9] to determine whether or not to vacate the order granting injunctive relief.  Id.  The Court noted that this analysis may apply even when both parties play a role in the events mooting the appeal.  Id.

However, the Ninth Circuit further explained that, "[t]he administration of a prison does not grind to a halt the moment an inmate files a lawsuit.  The Defendants had a relationship to [the plaintiff] other than as litigants; they continued to be responsible for [his] food, clothing, shelter, and safety and for the day-to-day administration of Calipatria." Dilley, 64 F.3d at 1372.  The Court noted that the defendants argued the plaintiff was transferred pursuant to prison regulations which permit an inmate to transfer to a lower security institution once he has served a specific amount of time as a Class IV inmate without substantial disciplinary problems.  Id.  The plaintiff was reclassified from a Class IV inmate to a Class III inmate and then transferred from Calipatria to a lower-level security institution. Id. at 1369.  Calipatria does not house Class III inmates.  Id.  Under those facts, the Ninth Circuit noted that the plaintiff's transfer from Calipatria was wholly unrelated to his lawsuit

---

[9] In Ringsby, the Ninth Circuit dismissed an appeal as moot where the parties to the litigation had settled their differences.  Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720, 721, 723 (9th Cir. 1982).  However, the Court denied a motion to vacate the judgment of the district court, reasoning in part, "[i]f the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books."  Id.

1    and would have occurred in the absence of the litigation.  Id. at 1372.  The Court also stated

2    that mootness resulting from such a transfer would be attributable to happenstance, even if

3    the defendants, as employees of the state's prison system, did play some administrative role

4    in the transfer.  Id.  The Court explained that to hold otherwise may create an incentive for

5    prison officials to hinder routine transfers that would otherwise be available to and desired

6    by inmates who have obtained favorable, but not yet reviewed, judgment in the district court.

7    Id.

8         In Dilley, the Ninth Circuit concluded that, if the district court determined on remand

9    that the plaintiff's transfer occurred by happenstance, then automatic vacatur of the

10   injunction was appropriate.  Dilley, 64 F.3d at 1372.  However, the Court stated that, if the

11   district court found on remand that the defendants played a role in the plaintiff's transfer and

12   that the transfer was related to the pendency of the appeal, then the district court must decide

13   whether or not to vacate the injunction.  Id.  The Court also stated that, in making its

14   determination, the district court should consider the fact that the only plaintiff to the lawsuit

15   was no longer incarcerated at Calipatria.  Id.

16        Here, Plaintiff claims that, "[m]ost prisoners just give up when nothing is done to

17   repair the track or they fear they will be transferred to a prison far away from their family."

18   (Doc. No. 9 at 8.)  He also states, "Please note that [Plaintiff] was transferred to this OHU

19   a week after his fall.  Imagine that."  Id.  The Court is troubled by the idea that an inmate can

20   file a grievance or a lawsuit alleging unconstitutionality of prison conditions or policies, and

21   instead of dealing with the issue the Department of Corrections has the ability to simply

22   transfer the inmate to a different facility, rendering the inmate's claim for injunctive relief

23   moot.

24        Prison officials have broad discretion to move a prisoner to another facility for

25   administrative or safety concerns, or for no reason at all.  See Antolin v. Halawa Correctional

26   Facility, 2009 WL 855806, at 5 (D. Haw. Mar. 31, 2009); see also Grayson v. Rison, 945

27   F.2d 1064, 1067 (9th Cir. 1991).  The Court is concerned that whenever an inmate files a

28   civil rights action seeking injunctive relief, the Department of Corrections can choose to

13CV0582

1    transfer that inmate to a different institution, and the issue will never be resolved.  However,

2    in line with the Ninth Circuit's discussion regarding vacatur of an injunction when a prisoner

3    is transferred pending appeal, it seems that in regard to injunctive mootness, the transfer

4    must be accompanied by some valid, penological purpose.

5        In this case, nothing in the record suggests that there was anything other than a

6    legitimate penological purpose in Plaintiff's transfer to an OHU facility.  The Court agrees

7    with Plaintiff that the timing of his transfer is slightly perplexing, as he was transferred a

8    mere six days after his fall on the track and several months after his transfer request was

9    granted.  However, the record is clear that Plaintiff requested a transfer to an OHU facility

10   due to his medical conditions, his primary doctor recommended a transfer, and the Chief

11   Physician approved such a transfer, all prior to the alleged incident on the A Yard track on

12   November 4, 2011.

13       Thus, because the Court finds that Plaintiff was transferred from Donovan for a

14   legitimate penological purpose, the Court follows the general rule that his transfer renders

15   his claim for injunctive relief moot.  If the record indicated that Defendants may have

16   transferred Plaintiff out of Donovan simply to avoid his request for injunctive relief, the

17   Court would likely consider a different outcome based on the Ninth's Circuit's discussion

18   in Dilley.

19       Adjudication of this case can serve no practical purpose because Plaintiff is no longer

20   incarcerated at Donovan, the facility of which he complains.  Plaintiff's opposition papers

21   contain no facts or allegations even alluding to the possibility that he will ever return to

22   Donovan.  Even if the Court was to find no legitimate penological purpose for Plaintiff's

23   transfer and determined that Plaintiff's request for injunctive relief was not moot on that

24   basis, the record shows that Defendants did make Plaintiff's requested changes to the track

25   surface.  Plaintiff asked, "[t]o have a track resurfaced or an identified path of travel for

26   wheelchairs." (Doc. No. 9 at 50.)  In response, Defendants Steadman and Cavender partially

27   granted Plaintiff's request, writing, "Plant Operations will restripe the path of travel on Yard

28

13CV0582

1<u>10/</u> and make repairs as needed in the path of travel." <u>Id.</u>  Plaintiff admits in his Complaint that after his request, lines were painted on the A Yard track surface, and a trench was filled. <u>Id.</u> at 14.  The Court interprets Plaintiff's Complaint to state that he asked for a wheelchair lane on the track and repairs to be made to the track as needed, and Defendants re-striped the track surface and made at least one repair.  Thus, despite Plaintiff's transfer from Donovan, based on the information in the record, the Court finds that Plaintiff's claim for injunctive relief is moot.

In his Opposition, Plaintiff states that he asserts a claim for injunctive relief because he does not want anyone else to be injured.  (Doc. No. 22 at 3.)  However, as Defendants argue, "absent a class-action, [Plaintiff] has no standing to sue for injunctive relief on behalf of other prisoners."  (Doc. No. 23 at 2-3; citing <u>Darring v. Kinchloe</u>, 783 F.2d 874, 878 (9th Cir. 1986.) )

The Court therefore finds that Plaintiff's claim for injunctive relief is moot.  Thus, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED, and Plaintiff's Complaint be DISMISSED without prejudice as to Plaintiff's claim for injunctive relief.  The Court recognizes that Plaintiff's transfer to another facility does not moot his claims for damages.

## C. **PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES**

Under the PLRA, an inmate who wishes to bring an action under Section 1983 regarding prison conditions must first exhaust the available administrative remedies.  42 U.S.C. § 1997(e)(a); <u>see</u> <u>also</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (although exhaustion of administrative remedies is not ordinarily a prerequisite for suits under 42 U.S.C. Section 1983, "PLRA's exhaustion requirement applies to all inmate suits about prison life...").  Exhaustion of the available administrative remedies is determined by examining the relevant administrative appeal system.  <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 218

---

<u>10/</u> Yard A was previously known as Yard 1.  (Doc. No. 9 at 7.)

1    (2007) ("The prison's requirements, and not the PLRA,...define the boundaries of proper

2    exhaustion.").

3          Here, the applicable requirements are those governing the California State Prison

4    system.  The administrative appeal system for California inmates is codified in Title 15 of

5    the California Code of Regulations.  Effective January 28, 2011, California's regulations

6    concerning the administrative appeals process were updated and changed in some respects.

7    Turner v. San Diego Central Jail, 2013 WL 6122070, at 5 (S.D. Cal. Nov. 19, 2013).

8    California now has a three-level appellate review process.  Cal. Code Regs. tit. 15, §§

9    3084.2, 3084.7 (2011).  Inmates and parolees may "appeal any policy, decision, action,

10   condition, or omission by the department or its staff that the inmate or parolee can

11   demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, §§

12   3084.1 (2011).

13         Specifically, in order to exhaust his administrative remedies, an inmate of this system

14   must proceed through the following three levels of review: (1) a first-level review by the

15   institution's division head; (2) a second-level review conducted by the institution head, no

16   lower than Chief Deputy Warden, or his or her designee; and (3) a third-level review,

17   conducted by the Office of Appeals, in Sacramento, California.  Cal. Code. Regs. tit. 15, §

18   3084.7 (2011).  Although first and second level appeals are to be decided by different

19   personnel, they are both to be submitted to the appeals coordinator at the institution for

20   processing.  Cal. Code. Regs. tit. 15, §§§ 3084.2(c), 3084.7(a) 3084.7(d) (2011).

21         To comply with the first level of review, the inmate must submit an appeal to the

22   institution's appeals coordinator within thirty calender days of the event or decision being

23   appealed.  Cal. Code. Regs. tit. 15, § 3084.8(a) (2011).  The appeals coordinator may cancel

24   and reject an appeal if the inmate fails to submit it within the specified time constraints.  Cal.

25   Code. Regs. tit. 15, § 3084.6(c) (2011).   A prisoner complies with an institution's

26   administrative procedures under the statute where a grievance "alerts the prison to the nature

27   of the wrong for which redress is sought."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

28   2009).  A prisoner's grievance "need not include legal terminology or legal theories"

13CV0582

1   regarding the allegation; rather, the grievance must "alert the prison to a problem" and

2   "allow prison officials to take appropriate responsive measures." Id.

3       If an inmate adds an issue to the appeal that was not included when it was originally

4   submitted, administrative remedies are deemed not exhausted as to the new issue that was

5   not addressed by prison staff through all required levels of administrative review. Cal. Code

6   Regs. tit. 15, § 3084.1(b) (2011).  Further, the inmate is required to list all staff members

7   involved and describe their involvement in the issue. Cal Code. Regs. tit. 15, § 3084.2(a)(3)

8   (2011).  A decision by the Chief of the Office of Appeals constitutes the final decision of the

9   Secretary of the CDCR and completes the administrative process. Snowden v. Prada, 2013

10  WL 4804739, at 7 (C.D. Cal. Sept. 9, 2013).  These steps must be completed before the

11  inmate files a claim in federal court. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir.

12  2006); 42 U.S.C. § 1997(e)(a).

13      In Woodford, the Supreme Court held that an inmate must properly exhaust

14  administrative remedies, including complying with the administrative time requirements,

15  before the inmate can file suit.  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  In Jones v.

16  Bock, 549 U.S. 199, 218 (2007), the Supreme Court held that it is the prisoner's observance

17  of the state's regulations and procedures concerning its administrative appeals process, and

18  not the PLRA itself, that determines whether a prisoner has properly exhausted administra-

19  tive remedies.  Defendants bear the burden of proving that Plaintiff has not exhausted his

20  administrative remedies, thus, the Court looks to the evidence presented by Defendants to

21  decide the issue. Silva v. Barreras, 2012 WL 1100661, at 3 (S.D. Cal. Feb. 17, 2012).

22      Here, Plaintiff argues that his appeal regarding the cancellation of his first appeal was

23  denied at all three levels of review, as the July 12, 2012, third level appeal decision states,

24  "This decision exhausts the administrative remedy available to the appellant within CDCR..."

25  (Doc. No. 9 at 26-27.)  Thus, Plaintiff contends, he did exhaust the appeals process available

26  to him. Id. at 27.  Defendants argue that Plaintiff has failed to exhaust his administrative

27  remedies as to the November 4, 2011, incident because "a cancellation or rejection decision

28  does not exhaust administrative remedies." (Doc. No. 23 at 8; citing Cal. Code Regs., tit. 15,

§ 3084.1(b).)  They argue that Plaintiff has not exhausted his administrative remedies concerning the incident on November 4, 2011: the incident at issue in the instant lawsuit. (Doc. No. 18-1 at 18.)  Instead, Plaintiff has exhausted the subsequent appeal concerning whether or not the original appeal was properly cancelled by the institution due to its alleged untimely submission.  Id; Doc. No. 18-4 at 4.

Defendants argue that Plaintiff had the opportunity to properly submit the appeal to Donovan during the first six days after the incident while he was still housed there.  (Doc. No. 18-1 at 16.)  Defendants argue that, between November 5, 2011, and November 10, 2011, when Plaintiff returned to Donovan from an overnight stay in the hospital, he had access to administrative appeals forms, the law library, and any assistance he may have needed to submit an appeal.  Id.  Defendants cite Plaintiff's appeal form[11/] to support their argument that he had the ability to submit an appeal within the thirty day time requirement. Id.  Defendants note that on the appeal form Plaintiff wrote, "Please note that I drafted this appeal on November 8, 2011, while at RJD."[12/]  Id.  Defendants argue that, although he had access to the appeal form and the ability to complete the form while still housed at Donovan, Plaintiff did not submit the appeal while he was at Donovan, nor did he timely submit the appeal to Donovan after his transfer to CIM despite being instructed to do so in CIM's screen-out letter.  Id. at 16-17.  They claim that the timely submission of Plaintiff's appeal of the cancellation to Donovan by mail from CIM, and its acceptance and processing at Donovan, demonstrates that Plaintiff could have done the same thing with the original appeal after he was transferred to CIM.  Id. at 17.

In his Opposition, Plaintiff claims that upon return from his overnight stay at the hospital, he spent the next day or two trying to unpack his property.  (Doc. No. 22 at 5.) Plaintiff also states that, during that time, CDCR custody and medical staff, as well as other

---

[11/] Defendants refer to the 602 grievance form. California's 602 appeals form requires only that an inmate "describe the specific issue under appeal and the relief requested." Johnson v. Darr, 2012 WL 848229, at 4, n.2 (S.D. Cal. Mar. 13, 2012); citing Cal. Code Regs. tit. 15, § 3084.2(a).

[12/] Plaintiff refers to Donovan as "RJD" throughout his Complaint.

13CV0582

1   inmates, were telling him to file an appeal.  Id.  However, Plaintiff claims that he has a hard

2   time putting thoughts together and on November 9, 2011, he was told to pack his property

3   because he was being transferred to CIM.  Id. at 5-6.  Further, Plaintiff claims that his appeal

4   was not untimely, as he did not know where to send the appeal.  (Doc. No. 18-5 at 26.)

5          The Court finds this issue to be troubling.  As noted above, under California's Code

6   of Regulations, inmates have thirty days to file an appeal at the institution.  Cal. Code. Regs.

7   tit. 15, § 3084.8(a).  Case law suggests that the appeal should be submitted to the institution

8   where the event giving rise to the grievance occurred.  See Griffin, 557 F.3d at 1120 (A

9   prisoner complies with an institution's administrative procedures under the statute where a

10   grievance "alerts the prison to the nature of the wrong for which redress is sought"... the

11   grievance must "alert the prison to a problem" and "allow prison officials to take appropriate

12   responsive measures.")  In his Declaration in support of Defendants' Motion to Dismiss, R.

13   Olson, Donovan's Appeals Coordinator, states that, "[a]dministrative appeals must be

14   submitted at the institution where the disputed event occurred, so that the persons reviewing

15   the appeal have 'signature authority for the approval or disapproval of the appeal response.'"

16   (Doc. No. 18-5 at 4; citing Cal. Code Regs. tit 15, § 3084(f); 3084.2(c); CDCR Department

17   Operations Manual, § 54100.6.)

18          A review of the regulations cited by R. Olson suggests that an inmate, especially one

19   who was transferred to a different prison during the thirty day time requirement for an

20   administrative appeal, could have believed that he was properly submitting an appeal to his

21   current institution.  It is true that California Code of Regulations Title 15, Section 3084(f),

22   which lists definitions, reads, "Reviewer means the individual **with signature authority for**

23   **the approval or disapproval** of an appeal response at any level."  Cal. Code Regs. tit 15,

24   § 3084(f) (emphasis added).  However, California Code of Regulations Title 15, Section

25   3084.2(c) reads, "First and second level appeals as described in [S]ection 3084.7 shall be

26   submitted to the appeals coordinator **at the institution** or parole region for processing."  Cal.

27   Code Regs. tit 15, § 3084.2(c) (emphasis added).  Finally, the CDCR Department Operations

28   Manual, Section 54100.6, directs inmates to, "...attach all original relevant supporting

1   documents and forward them, in a single mailing, **to the appropriate appeals office**."

2   CDCR Department Operations Manual, § 54100.6  (emphasis added).

3       Moreover, R. Olson cites Section 3084.7(a) in his Declaration, stating, "[a]ppeals are

4   to be initially submitted directly to the appeals coordinator at the inmate's institution for

5   review and processing at the first and second levels of review."  (Doc. No. 18-5 at 3; citing

6   Cal. Code Regs. tit. 15, § 3084.7(a.).)  However, Section 3084.7(a) does not expressly state

7   that appeals must be sent to the institution where the alleged grievance occurred.  Section

8   3084.7(a) reads,

9       3084.7. Levels of Appeal Review and Disposition.
        (a) All appeals shall be initially submitted and screened at the first level unless
10      the first level is exempted. The appeals coordinator may bypass the first level
        for appeal of:
11      (1)  A policy, procedure or regulation implemented by the department.
        (2)  A policy or procedure implemented by the institution head.
12      (3) An issue that cannot be resolved at the division head level such as Associate
        Warden, Associate Regional Parole Administrator, PIA manager or equivalent.
13      (4)  Serious disciplinary infractions.

14   Cal. Code. Regs. tit. 15, § 3084.7(a).

15      Plaintiff was transferred from Donovan only six days after the incident of which he

16  complains.  He submitted his appeal to CIM within the thirty day time requirement.  To find

17  that Plaintiff has failed to exhaust his administrative remedies would be to ignore the

18  disturbing possibility that in a situation such as this one, the Department of Corrections can

19  simply transfer an inmate with a grievance to a different facility, causing additional

20  challenges and obstacles to the inmate both in filing timely and in filing at the correct

21  institution.  As Plaintiff notes in his Complaint, when an inmate is transferred to a different

22  facility, it can take time for personal property and legal documents to be reunited with the

23  inmate.  This transition, along with Plaintiff's claimed medical issues and problems "putting

24  thoughts together," suggest that ignoring Plaintiff's timely appeal to CIM is not a reasonable

25  or appropriate solution under these circumstances.

26      In Jones, the Supreme Court held that it is the prisoner's observance of the state's

27  regulations and procedures concerning its administrative appeals process that determines

28  whether a prisoner has properly exhausted administrative remedies.  Jones, 549 U.S. at 218.

The Court recognizes that rules and regulations exist for a reason, and that inmates should certainly be required to comply with the rules. There are significant benefits to rules requiring inmates to timely seek redress of their grievances. But rules have to be tempered with some flexibility and reasonableness. The Court finds that this particular Plaintiff, under these specific circumstances, did not attempt to circumvent the administrative appeals process by submitting his appeal to the CIM appeals coordinator. Based on the record, the Court finds that Plaintiff legitimately believed that he was in full compliance with the relevant rules and regulations when he submitted his appeal to CIM within thirty days of the incident. This was not an attempt by Plaintiff to gain an unfair advantage by delaying filing or filing at the wrong institution.

Moreover, the state prison system of which Plaintiff is an inmate is all part of one Department of Corrections. It is the Department of Corrections, not the inmate, that seems to be in the best position to forward an inmate's timely appeal to the correct institution for processing. On December 1, 2011, the appeals coordinator at CIM received Plaintiff's appeal concerning the November 4, 2011, incident. Plaintiff's appeal was rejected in a letter that same day, which advised Plaintiff to submit the appeal to Donovan for further processing. Id. at 15; citing Exh. A to Defendants' Motion to Dismiss, screen-out letter. But Defendants ignore the fact that the CIM screen-out letter was dated December 1, 2011, and Plaintiff had a mere three days left for it to timely reach Donovan. The screen-out letter had to be returned to Plaintiff, and Plaintiff had to then re-submit his appeal to Donovan, assuming that he even received the screen-out letter by December 4, 2011. Instead, the CIM appeals coordinator, recognizing that the appeal was timely and needed to be sent to Donovan, could have forwarded it directly to the Donovan appeals office.

Defendants bear the burden of proving that Plaintiff has not exhausted his administrative remedies, thus, the Court looks to the evidence presented by Defendants to decide the issue. Silva v. Barreras, 2012 WL 1100661, at 3 (S.D. Cal. Feb. 17, 2012). Defendants assert that Donovan received Plaintiff's appeal on January 10, 2012, but there is no evidence regarding when Plaintiff actually mailed the appeal.     At the second level

13CV0582

1 of administrative review as to whether to allow Plaintiff's original appeal to be resubmitted
2 for processing, Donovan's Chief Deputy Warden noted that there was "currently no record"
3 of a timely appeal submitted to Donovan.  (Doc. No. 18-5 at 27.)  However, the Chief
4 Deputy also insinuated that Plaintiff claimed to have sent a timely appeal directly to the
5 Donovan appeal's office.  Id.  While the record does not show specific evidence that Plaintiff
6 did put an appeal in the mail to Donovan within thirty days of November 4, 2011, the record
7 is also void of specific evidence that he did not put it in the mail on time.  The Court
8 recognizes that this analysis has the potential to lead down a slippery slope regarding
9 granting leniency to inmates for non-compliance with or incorrect interpretations of rules and
10 regulations.  However, the Court makes this finding based solely on the instant record, the
11 papers filed by the parties, and the specific circumstances of this case.  Further, and perhaps
12 more persuasive to this Court, there is a record of Plaintiff's timely appeal submitted to CIM.
13 (Doc. No. 9 at 36.)

14      Defendants claim that the timely submission of Plaintiff's appeal of the cancellation
15 to Donovan by mail from CIM, and its acceptance and processing at Donovan, demonstrates
16 that Plaintiff could have done the same thing with the original appeal after he was transferred
17 to CIM.  Id. at 17.  However, the Court notes that this also demonstrates that, once Plaintiff
18 was informed that his appeals must be submitted to Donovan, he complied with the
19 requirement.

20      Based on the reasons discussed above, the Court finds that Plaintiff has exhausted his
21 administrative remedies and thus, is not barred from filing a lawsuit under Section 1983
22 alleging violation of his Eighth Amendment and ADA rights related to the November 4,
23 2011, incident.  However, because Plaintiff's request for injunctive relief is moot, and
24 Plaintiff is unable to recover monetary damages from Defendants as they were all sued only
25 in their official capacities, the Court RECOMMENDS that Defendants' Motion to Dismiss
26 be GRANTED and Plaintiff's Complaint be DISMISSED with leave to amend.

27 //

28 //

13CV0582

1

## VII. CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion to Dismiss be GRANTED and Plaintiff's Complaint be DISMISSED with leave to amend.  This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(1988) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that no later than February 24, 2014, any party to this action may file written objections with the Court and serve a copy on all parties.  The document shall be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than March 10, 2014.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). IT IS SO ORDERED.

DATED:  January 27, 2014

_____
Hon. William V. Gallo
U.S. Magistrate Judge

13CV0582